ROWLAND & REYNOLDS vs. CRAWFORD & MARCUS—June 1826.

By the act of 1788, *ch.* 40, *s.* 2, all persons, or those claiming under them, claiming certain lands by virtue of any grant, warrant, lease, license or agreement, from the proprietors of *Pennsylvania*, were entitled to a patent from this state, &c. J C was entitled to an equitable right in these lands. A judgment was obtained against him by R, and the lands of J C were sold and purchased by R, who obtained a patent for them in his own name. The representatives of J C filed a bill against R, to compel him to convey the lands to them, alleging an agreement by R to obtain a patent in the name of J C and for his benefit, in consideration of being paid the amount of the judgment. R in his answer denied the agreement. Two witnesses proved the existence of an agreement to relinquish the claim and right of R to the lands, upon being paid his debt, &c. The allegation in the bill that the lands were to be patented in the name of J C, was disproved; and it did not appear how they were to be patented; but as R could only obtain a patent in his own name as a claimant under J C, the presumption was *held* to be that he had an assignment from J C. Also *held*, that although when R purchased, lands held by equitable title were not liable to be sold under a *fi. fa.* yet that R, by such purchase, had in equity a right to have them appropriated to the payment of his debt, and that a sale of them would have been decreed for that purpose. That giving to the agreement the most favourable interpretation, no conveyance from R could be decreed. That it was in terms an agreement within the statute of frauds, there being no evidence to bring it within the cases adjudged to be excepted from the operation of that statute.

APPEAL from the equity side of *Cecil* County Court from a decree passed in favour of the complainants in that court, now appellees. The facts of the case sufficiently appear in the opinion delivered by this court.

The cause was argued in this court before BUCHANAN, Ch. J. and MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*Gale*, for the Appellants, stated that the bill was filed to compel the specific execution of an alleged verbal contract in the year 1788 relative to a tract of land called *Crawford's Last Shift*. He contended, 1. That the contract stated in the bill was without consideration, and therefore void.

2. That it was subsequently rescinded and abandoned by mutual consent.

3. That it could not legally operate to the injury of a fair and *bona fide* purchaser without notice.

4. That there was no replication in the record, and that therefore the case was to be treated as if it stood solely on bill and answer; and the answer fully denied all the equity stated in the bill.

5. Supposing these grounds to fail, he then contended that the evidence was not sufficient to sustain the allegations in the bill.

6. That admitting the charges in the bill to be all proved, the interlocutory decree was erroneous in not allowing to *Rowland,* one of the defendants, his personal expenses, and also in stopping the interest at the time of old *Crawford's* death.

7. That none of the testimony, taken under the commission issued to *Porter* and *Davidson,* could be received as evidence, because the agreement was that the commission should not be joint; and it issued jointly and severally, and only one commissioner acted and made the return.

*Chambers,* for the Appellees.

ARCHER, J. delivered the opinion of the court. By the *second* section of the act of 1788, *ch.* 40, all persons claiming such right to the confiscated lands in *Cecil* county, known by the name of the *Nottingham Lands,* as is described in that *section,* were entitled to patents, upon conforming to the terms prescribed by that act; and all persons claiming under them, were likewise entitled to patents. It appears that *John Crawford* was a settler on these lands, and entitled by license or agreement with the then proprietor of *Pennsylvania,* to an equitable right in the lands mentioned. A judgment was obtained against him by *Rowland,* one of the respondents, and the land of *Crawford* was sold under execution, when *Rowland* became the purchaser; and about the year 1790, after the sale by the sheriff, obtained a patent therefor from the state, in his own name. The complainants filed this bill in *Cecil* county court as a court of equity, to compel *Rowland* to convey the lands thus patented, to them, alleging themselves to be the

legal representatives of *John Crawford;* and also alleging an agreement on the part of *Rowland* to obtain a patent therefor, in the name of *Crawford,* and for his use and benefit, in consideration of being paid the debt, interest and costs, (his judgment against him.)

The answer positively denies the agreement; and the complainants establish by two witnesses the existence of an agreement to relinquish the claim and right of *Rowland* to the land, upon his being paid his debt, interest and costs, and the costs expended in obtaining the patent; and one of the witnesses states that the *patent was obtained in pursuance of the agreement.*

The patent having been obtained by *Rowland,* in his own name, in pursuance of the agreement, the allegation in the bill, that it was to be obtained by him in the name of *Crawford,* is disproved. In what manner this patent was obtained by the respondent, no where appears. He could, by the terms of the law, only have obtained it in his own name, as a claimant under *Crawford,* and must have had an assignment of *Crawford's* right to have come strictly and legally within the term *"claimant."* And giving to the law of 1788 a just construction, it might be fair to presume, as *Rowland* obtained the patent in his own name, that *Crawford* did assign to him his right in the land, notwithstanding the allegations of the bill, which go to negative the idea of such an assignment. But be the means what they may, by which these lands were patented in the respondent's name, we cannot presume that they were fraudulent. Fraud cannot be presumed; it must be deduced from facts and circumstances which warrant just conclusions, and legal inferences. If his obtention of the patent was founded on an assignment of *Crawford's* rights, we are bound to believe that such assignment was obtained upon a fair consideration, until the contrary is made appear.

This court conceive, that the agreement is destitute of the consideration which could give it legal efficiency. The respondent purchased these lands under an execution; and although at the time of the purchase, lands held by equitable title were not liable to a seizure and sale under a *fieri facias,* yet by such a proceeding the respondent had in equity a right to have

them appropriated to the payment of his debt, and a sale of them would have been decreed for that purpose. If then this equitable right existed to such an appropriation of these lands, what consideration passed for the promise to relinquish his rights to them upon the payment of his debt? It is, manifestly, a mere gratuitous promise, which, however binding in point of morality, has not the force of legal obligation.

But giving to the agreement, in point of consideration, the most favourable interpretation which an interested mind could extract from the evidence which accompanies it, we are satisfied that no conveyance from the respondent can be decreed. It is, in terms, an agreement within the statute of frauds; and there is no testimony which will bring it within the range of those cases excepted from the operation of the statute by judicial determinations. The decree of the court below is therefore reversed, and this court will decree that the bill filed in this case shall be dismissed.

DECREE REVERSED, &c.